[No. 32815. Department Two. October 29, 1954.]

MT. BAKER PARK CLUB, INC., *et al., Respondents,* v.
J. A. COLCOCK *et al., Appellants.*[1]

*Rummens, Griffin, Short & Cressman,* for appellants.

*Venables, Ballinger & Clark,* for respondents.

[1]Reported in 275 P. (2d) 733.

WEAVER, J.—This is an action to enforce a restrictive covenant in a deed.

Defendants appeal from a decree which (a) permanently enjoins them from maintaining on their residential property any garage or other building within twenty-five feet of the street line of the lot on which the building faces; (b) orders them to remove all or any portion of a certain garage which lies within twenty-five feet of the street line of said lot, but allows them to retain their existing concrete bulkheads up to the height of ground contours; and (c) permanently enjoins them from using the resulting structure as a garage, carport, or for any purpose other than a bulkhead or ground support.

In 1906, the Hunter Tract Improvement Company platted a large tract of land into lots, blocks, roadways, and parkways along the shore of Lake Washington. It was designated "Mt. Baker Park, an addition to the city of Seattle." At all times the improvement company gave wide publicity by printed advertisements and oral statements of its intention to make the addition a high-class residential section of the city.

(A more detailed history of this development may be found in *Hunter Tract Imp. Co. v. Corporation of Catholic Bishop*, 98 Wash. 112, 167 Pac. 100 (1917) and in *Johnson v. Mt. Baker Park Presbyterian Church*, 113 Wash. 458, 194 Pac. 536 (1920)).

In general, the declared intention was achieved by inserting a restrictive covenant in the deed of conveyance to the purchasers of lots. This restriction reads as follows:

"This sale is made subject to the following restrictions: nothing but a single, detached residence, costing not less than $............... shall be built on any one lot, and shall be used for residence purposes only. No old buildings shall be moved thereupon. *No buildings* shall be nearer than 25 feet from the street line of said lot, upon which said building faces." (Italics ours.)

The addition contains eight hundred and forty-seven lots which were sold by the improvement company between

1906 and 1922. In most of the deeds, the improvement company inserted a twenty-five-foot building setback. Because of topography or building necessities, some of the deeds contained less than the usual twenty-five-foot setback and a few were issued without any building setback. The trial court found that these variations "were a part of and not inconsistent with the whole plan of restrictions."

Residents of the district organized the Mt. Baker Park Improvement Club in 1910. Since that time, it has worked for the betterment of the community and has always had an active restrictions committee.

Appellants have owned property in the district for about thirty years, and they have owned the lot in question since 1935. They knew that their property was subject to a twenty-five-foot setback building restriction. Originally, their lot extended from Mt. Claire Drive, on the south, to Shoreland Drive, on the north. Shortly after purchasing it, appellants sold the south sixty feet of the lot (except a three-foot strip) to the adjoining landowner. Appellants could have built a garage upon the land so conveyed.

May 25, 1951, appellants commenced construction of a garage, the front of which is three feet from the property line of Shoreland Drive, upon which their residence faces. Members of the restriction committee of the Mt. Baker Park Improvement Club advised appellants that the garage was in violation of the building restriction and requested that work be discontinued. The request was ignored and this action resulted.

Appellants' first contention is summarized in their brief as follows:

"The short answer is that the restriction permits residence buildings only and *prohibits garages by its terms.* It is, as a practical matter, unenforcible as to garages. But this does not mean that a requirement as to residences must therefore be imposed upon garages. The restriction is no more logical in its application to garages in the setback requirements than it is in cost requirements. The answer is it doesn't fit. It wasn't designed for or directed at garages. It would be idle to conjecture what the framers of the re-

striction would have provided for garages if they had contemplated the subject. There simply is no enforcible restriction in the district as to garages." (Italics ours.)

In support of their conclusion, appellants cite *Jones v. Williams*, 56 Wash. 588, 106 Pac. 166 (1910).

■ We cannot agree with appellants' initial premise, that the restriction prohibits garages, nor can we agree with the logic by which they reach their conclusion.

"It would seem that today it could hardly be questioned that a garage, whether attached or unattached to a dwelling house, for the private use of the occupants of the premises, is no more than an incidental use of the property for a residence, and that its use for such purposes is not prohibited by a restriction of the property to residential purposes." Annotation: Construction and application of covenant restricting use of property to "residence" or "residential purposes." 175 A. L. R. 1191 at 1206. (1948)

A private garage is a proper appurtenance necessary to the enjoyment of a dwelling house and does not violate a covenant restricting the use of property "for residence purposes only." Appellants' argument, that all doubt must be resolved against the restriction and in favor of the free and unrestricted use of property, leads inevitably to this conclusion.

■ Such a garage, appurtenant to a residence, is a building, and, if erected within three feet of the street line, is in violation of a covenant that

"*No buildings* shall be nearer than 25 feet from the street line of said lot, upon which said building faces." (Italics ours.)

*Jones v. Williams, supra,* is distinguishable. A demurrer was sustained to a complaint praying that defendants be restrained from constructing "a public garage plant" or "storeroom" beyond a designated building line. This court held, as a matter of law, that such a structure did not violate a covenant prohibiting the erection of

" ' . . . any *flat building or tenement house* on said premises, nor shall there be any *residence or other dwelling house* erected on said premises nearer to the street line than

on a line with the two residences now on either side of said lot.' "

The covenant being considered in the instant case prohibited the erection of *any* building within the prohibited area.

Appellants also contend that the setback restriction, as to garages, has been abandoned and waived and that respondents are estopped to enforce it.

■ This court has recognized that owners of land have a right in equity to enforce covenants to which they are not parties when it appears that a general building scheme or plan for development of the properties has been adopted, which plan is designed to make it more attractive for residential purposes by reason of certain restrictions imposed on each of the separate lots. *Johnson v. Mt. Baker Park Presbyterian Church,* 113 Wash. 458, 194 Pac. 536 (1920) and cases cited.

If, however, the general building plan has not been applied to the entire tract (*Tindolph v. Schoenfeld Bros.,* 157 Wash. 605, 289 Pac. 530 (1930), or after the plan was established it was habitually and substantially violated, so that it might be said to have been abandoned, then equity will not enforce the covenants. *Ronberg v. Smith,* 132 Wash. 345, 232 Pac. 283 (1925).

"Injunctive relief against violation of the obligations arising out of a promise respecting the use of land cannot be secured if conditions have so changed since the making of the promise as to make it impossible longer to secure in a substantial degree the benefits intended to be secured by the performance of the promise." Restatement, Property, § 564.

See, also, Annotation: Change of neighborhood in restricted district as affecting restrictive covenant. 4 A. L. R. (2d) 1111 (1949), *et seq.*

The trial judge, after an inspection of the property so he might better understand the evidence, entered the following finding of fact:

"There are in Mt. Baker Park Addition at the present time a small number of lots upon which garages have been built

within the restricted area set forth in the deeds thereto. The number of such garages, their location and manner of construction is not sufficient to create any substantial modification of the restricted plan under which lots in said tract were sold as above stated, and said plan has not been abandoned and they do not show either an intent to abandon the restrictive covenants or the overall plan embodied in the deeds to residents thereof, nor do they show substantial changes in the nature of the neighborhood as originally planned and carried out by the above plan."

■ We cannot say that the evidence preponderates against this finding of fact. Hence, appellants' argument, that the restrictive covenant as it applies to private garages has been waived and abandoned, is not well taken.

■ Finally, appellants urge that respondents should not prevail because they have been guilty of laches. Had respondents failed to proceed in this matter with reasonable promptness, appellants' contention would have merit. Restatement, Property, § 562; Annotation: Laches or delay in bringing suit as affecting right to enforce restrictive building covenants. 12 A. L. R. (2d) 394 (1950), *et seq.*

However, shortly after appellants commenced excavation for their hillside garage and before any concrete was poured, the president of the Mt. Baker Park Improvement Club wrote appellants calling attention to their violation of the building restriction and giving notice that if the structure were completed respondents would be required to seek its abatement. In spite of this letter, construction continued. A subsequent conference between the interested parties did not remedy the situation.

Under these circumstances, a reasonable delay in filing suit is not fatal to specific enforcement of the building restriction (of which appellants had knowledge before commencing construction) where the delay is due to a desire to procure compliance by means other than litigation. *McNair v. Raymond*, 215 Mich. 632, 184 N. W. 412 (1921).

The decree is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.